# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE<br><br>      Plaintiff,<br>v.<br><br>SWAPP LAW, PLLC and JAMES CRAIG SWAPP,<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 2:17-cv-01130<br><br>District Judge Jill N. Parrish |

   Plaintiff Hartford Casualty Insurance Company ("Hartford") moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Hartford argues that it has no duty to defend or indemnify Swapp Law, PLLC and James Craig Swapp (collectively "Swapp Law") in connection with the civil action *Wilcox, et. al. v. Swapp Law PLLC, et al.*, Case No. 2:17-cv-275 (E.D. Wash. 2017) (the "Underlying Action"). The court heard oral argument on the motion on December 5, 2018 and took the matter under advisement. The court now GRANTS the motion.

## BACKGROUND

   Hartford is an insurance company organized under the laws of Indiana with its principal place of business in Connecticut. Since 2013, Hartford has provided business liability insurance to Swapp Law, a Utah limited liability company, under policy number 34 SBA PF678 SC ("the Policy") that was renewed annually.[1] The Policy covers claims brought against Swapp Law arising

---

[1] Although there are actually five separate policies, each covering a different year, the court refers to them collectively as "the Policy." The parties have stipulated that the policies are identical for the purpose of this case. All citations will be to the policy running from February 2016 to February

from bodily injury, property damage, and personal and advertising injury, subject to specified exclusions.

At issue in this suit is whether Hartford must defend and indemnify Swapp Law from personal and advertising injury claims brought against Swapp Law in the United States District Court for the Eastern District of Washington in the Underlying Action for alleged violations of a federal statute, the Driver's Privacy Protection Act, 18 U.S.C. § 2721 *et seq.* ("DPPA"). The class action plaintiffs in the Underlying Action allege that between September 2013 and May 2016, Swapp Law "purchased more than 10,000 accident reports from the Washington State Patrol" that were used "to mail numerous letters and glossy pamphlets advertising [Swapp Law's] services to motorists" in violation of the DPPA. Mot. J. Pleadings at 6-7. The DPPA violations are the sole cause of action brought by the class action plaintiffs.

Hartford argues that the claims in the Underlying Action are not covered by the Policy because they fall under two separate exclusions. The first excludes coverage for claims arising solely from federal or state statute (the "Statutory Exclusion"). The second excludes coverage for claims arising from materials distributed in violation of a statute (the "Distribution Exclusion"). Hartford seeks a declaratory judgment that it is neither required to defend nor indemnify Swapp Law. Swapp Law asks the court to decide whether there is a duty to defend but requests the court defer ruling on the duty to indemnify.

---

2017. *See* Hartford Spectrum Business Insurance Policy (February 15, 2016 - February 15, 2017), Mot. J. Pleadings, Exhibit 4.

# ANALYSIS

## A. LEGAL STANDARD

"After the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The court evaluates a Fed. R. Civ. P. 12(c) motion using the same standard as a Fed. R. Civ. P. 12(b) motion. *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (citing *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)). The court must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Id.* (internal quotation marks omitted). "A motion for judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

In deciding a motion for judgment on the pleadings, the court may consider documents that are attached to the complaint or that are referred to in the complaint if the authenticity of the documents is not in question and the "documents are central to the plaintiff's claim." *BV Jordanelle, L.L.C. v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1201 n.3 (10th Cir. 2016). In this case, the court will consider the complaint in the Underlying Action and the Policy itself. These documents are central to the case, their authenticity is not contested, and the documents were either attached or referenced in the complaint.

The burden is on Swapp Law, as the insured, to establish coverage, "even when the insurer commences a declaratory action to resolve the question." *Cincinnati Ins. Co. v. AMSCO Windows*, 921 F. Supp. 2d 1226, 1233 (D. Utah 2013), *supplemented*, 2013 WL 12141330 (D. Utah 2013), and *aff'd*, 593 F. App'x 802 (10th Cir. 2014). Only when Swapp Law "meet[s] [its] burden of establishing that the loss falls within the scope of the policies' coverage provisions does the burden

shift to [Hartford, the insurer,] to prove that the claim is not covered because of an exclusion." *Id*. (citing *LDS Hosp., Div. of Intermountain Health Care v. Capitol Life Ins. Co.*, 765 P.2d 857, 859 (Utah 1988)). If Hartford satisfies its burden of establishing an exclusion, the burden shifts back to Swapp Law to establish the applicability of an exception to the exclusion. "Because the insured bears the burden of establishing coverage under an insurance policy, it makes sense that the insured must also prove that the exception affords coverage after an exclusion is triggered." *See St. Paul Fire & Marine Ins. Co. v. Warwick Dyeing Corp.*, 26 F.3d 1195, 1200 (1st Cir. 1994).[2]

### B. DUTY TO DEFEND

Under Utah Law,[3] the duty to defend and the duty to indemnify are contractual and "hinge[] on the particular contractual terms of the insurance policy defining the scope of the duty to defend and the duty to indemnify." *Fire Ins. Exch. v. Estate of Therkelsen*, 27 P.3d 555, 561, 559 (Utah 2001). Under the plain language of the Policy, Hartford's duty to defend turns on whether Hartford is potentially liable for a damage award against Swapp Law. "We will have the right and duty to defend the insured against any 'suit' seeking [covered] damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for . . . 'personal and advertising injury' to which this insurance does not apply." *See* Policy, Business Liability Form § A (1)(a).

---

[2] When a court sits in diversity, the interpretation of an insurance contract is matter of state law. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995). Because neither the Utah Supreme Court nor the Tenth Circuit have determined which party has the burden to prove an exception to an exclusion, the court follows the established rule in several circuits. *See Emerson Enterprises, LLC v. Hartford Acc. & Indem. Co.*, 531 F. App'x 152, 153 (2d Cir. 2013); *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 157–58 (4th Cir. 2009); *Guar. Nat. Ins. Co. v. Vic Mfg. Co.,* 143 F.3d 192, 193 (5th Cir. 1998); and *N. Ins. Co. of New York v. Aardvark Assocs., Inc.*, 942 F.2d 189, 195 (3d Cir. 1991) (all holding that the insured bears the burden of establishing an exception to the exclusion).

[3] The parties stipulate that Utah law applies to the interpretation of the Policy.

To determine whether Hartford is potentially liable for the claimed damages, the court applies the "eight corners" rule and compares the language found in the four corners of the Policy to the allegations made in the four corners of the underlying complaint. *Basic Research, LLC v. Admiral Ins. Co.*, 297 P.3d 578, 580 (Utah 2013) (citing *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co*., 266 P.3d 733 (Utah 2011)).[4] "When those allegations, if proved, could result in liability under the policy, then the insurer has a duty to defend." *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 133 (Utah 1997) (citing *Deseret Fed. Sav. & Loan Assoc. v. United States Fidelity & Guar. Co.,* 714 P.2d 1143, 1146-47 (Utah 1986)). But "[w]here the allegations [in the complaint], if proved, show 'there is no potential liability [under the policy], there is no duty to defend.'" *Basic Research,* 297 P.3d at 580 (Utah 2013) (quoting *Deseret Fed. Sav. & Loan*, 714 P.2d at 1147).

Hartford argues that it has no potential liability for any damages in the Underlying Action because the class action plaintiffs in the Underlying Action only allege violations of the DPPA. According to Hartford, those claims are excluded from coverage under the Policy by two exclusions: the Statutory Exclusion and the Distribution Exclusion. The court agrees with Hartford that there is no duty to defend because the damages claimed in the Underlying Action are excluded under the Statutory Exclusion. Because the duty to defend is broader than the duty to indemnify, Hartford also has no duty to indemnify Swapp Law for its alleged violations of the DPPA. In light of the court's holding that the Statutory Exclusion applies, the court need not and does not consider the applicability of the Distribution Exclusion.

---

[4] "If the language found within the collective 'eight corners' of these documents clearly and unambiguously indicates that a duty to defend does or does not exist, the analysis is complete." *Basic Research, LLC v. Admiral Ins. Co.*, 2013 UT 6, ¶ 7, 297 P.3d 578, 580 (citing *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 266 P.3d 733 (Utah 2011).

5

### 1. The Statutory Exclusion

Hartford argues that the damages claimed in the Underlying Action are not covered by the Policy because they arise from violations of a federal statute and thus are excluded by the Policy's Statutory Exclusion. The Statutory Exclusion excludes from the Policy coverage for claims for personal and advertising injury "arising out of the violation of a person's right of privacy created by any state or federal act." Policy, Business Liability Form § B (1)(p)(11). There is, however, an exception to the Statutory Exclusion that states "this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act." *Id.* While Swapp Law does not contest the applicability of the exclusion itself, it argues that the claims at issue in the Underlying Action fall under the exception to the exclusion.

Hartford asks the court to follow *Hartford Cas. Ins. Co. v. Greve*, 2017 WL 5557669 (W.D.N.C. 2017), *aff'd sub nom. Hartford Cas. Ins. Co. v. Ted A. Greve & Assocs., PA*, 2018 WL 3752235 (4th Cir. 2018), a district court opinion from the United States District Court for the Western District of North Carolina affirmed by the Court of Appeals for the Fourth Circuit. In that virtually identical case, the underlying action asserted a single claim for damages under the DPPA for the improper acquisition and distribution of motor vehicle records that were then used to distribute legal pamphlets. The district court held that any claim for relief asserted under the DPPA is "solely a creature of federal law, which defeats coverage under the plain language of this exclusion." *Id.*, at *4. The *Greve* court further found that the exception to the Statutory Exclusion did not apply because North Carolina law did not provide a cause of action for the type of violation protected by DPPA. *Id.* Although the *Greve* case decided the same issue currently before the court, it is not binding precedent. This court therefore must analyze the issues independently.

Here, the only claim for relief asserted in the Underlying Action is a claim for relief alleging violations of the DPPA. Compl. at 21, *Wilcox et al. v Swapp Law PLLC et al.*, No. 2:17-

cv-275 (E.D. Wash. 2017). The DPPA explicitly prohibits the release of "personal information" and "highly restricted personal information." By definition, the statute creates a right to recover damages for violation of a privacy right. *See Maracich v. Spears*, 570 U.S. 48, 51-52 (2013) (Congress "enacted the Driver's Privacy Protection Act of 1994" because it was "[c]oncerned that personal information collected by States in the licensing of motor vehicle drivers was being released—even sold—with resulting loss of privacy for many persons."); s*ee also Collier v. Dickinson*, 477 F.3d 1306, 1309-10 (11th Cir. 2007) ("We find that the plain language of the DPPA clearly, unambiguously, and expressly creates a statutory right which may be enforced by enabling aggrieved individuals to sue persons who disclose their personal information in violation of the DPPA."). When a party asserts a claim under the DPPA, the party alleges a violation of the privacy right protected by the statute. Thus, the claim brought against Swapp Law in the Underlying Action is a claim for a "personal and advertising injury" that "aris[es] out of the violation of a person's right of privacy created by any state or federal act." The damages claimed in the Underlying Action therefore fall under the Statutory Exclusion.

### 2. The Statutory Exclusion Exception

Having concluded that the Statutory Exclusion applies, the court turns its attention to the applicability of the exception to the exclusion. The Policy states that the Statutory "[E]xclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act." Policy, Business Liability Form § B (1)(p)(11). The meaning of this exception is disputed by the parties. Hartford alleges that the exception requires the insured to establish the existence of a separate cause of action for damages under Washington law that plaintiffs could have included in the Underlying Action. Because no such cause of action exists under Washington common law, Hartford maintains that the exception does not apply. In contrast Swapp Law asserts

7

that because the DPPA protects privacy rights, the only issue is whether a "right of privacy" has been invaded, not whether the invasion is actionable under Washington common law.

The burden is on Swapp Law to establish that the exception applies, thus any ambiguity should be resolved in Hartford's favor. *See St. Paul Fire & Marine Ins. Co. v. Warwick Dyeing Corp.*, 26 F.3d 1195, 1200 (1st Cir. 1994); *see also* cases collected, *supra* note 2 at 4. But the language of the exception is unambiguous. It explicitly requires that there be "liability for damages" absent the statute, not just a violation of some amorphous right. The court must therefore decide whether Swapp Law would be liable for the alleged damages in the absence of the DPPA.

Because the contractual duty to defend is conditioned on potential liability for damages, the court must look beyond the four corners of the complaint. *See Fire Ins. Exch. v. Estate of Therkelsen*, 27 P.3d 555, 561 (Utah 2001) (If "the parties make the duty to defend dependent on whether there is actually a 'covered claim or suit,' extrinsic evidence would be relevant to a determination of whether a duty to defend exists."). In this case, the court must look to *the facts* as alleged to determine if they could sustain a potential claim for damages arising from personal and advertising injury. *See Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 957 F. Supp. 2d 1135, 1153 (C.D. Cal. 2013), *aff'd*, 635 F. App'x 351 (9th Cir. 2015) (looking to the facts of the complaint, not just the pleadings). And as the conduct at issue in the Underlying Action occurred in Washington, the court finds that Washington state law should apply to the underlying claims.[5] Therefore, the court must look to Washington law to determine if the class action plaintiffs in the

---

[5] The court, sitting in diversity, applies Utah choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021, 85 L. Ed. 1477 (1941). Utah follows the Restatement (Second) of Conflict of Laws and applies the law of the most significant relationship in tort cases. *Records v. Briggs*, 887 P.2d 864, 867 (Utah Ct. App. 1994); s*ee, e.g., Forsman v. Forsman,* 779 P.2d 218, 219–20 (Utah 1989). Washington has the most significant relationship to the conduct alleged in the Underlying Complaint.

Underlying Action could have asserted a claim for damages against Swapp Law in the absence of a state or federal statute.

Washington tort law protects an "individual's interest in leading a secluded and private life, free from the prying eyes, ears and publications of others." *Grinenko v. Olympic Panel Prod.*, 2008 WL 5204743, at *7 (W.D. Wash. 2008) (citing *Eastwood v. Cascade Broadcasting Co.,* 722 P.2d 1295 (Wash. 1986)). Specifically, Washington law recognizes "four types of invasion of privacy claims: (1) intrusion upon seclusion,[6] (2) appropriation or exploitation of a plaintiff's name,[7] (3) public disclosure of private facts,[8] and (4) placing another in false light.[9]" *Id*. Of the four, only the intrusion upon seclusion claim could possibly give rise to the claims for damages asserted in the Underlying Action.

To assert a claim for "intrusion upon seclusion" under Washington Law in accordance with the Restatement (Second) of Torts § 652B (1977), the plaintiff must establish:

> 1. An intentional intrusion, physically or otherwise, upon the solitude or seclusion of plaintiff, or his private affairs;
> 2. With respect to the matter or affair which plaintiff claims was invaded, that plaintiff had a legitimate and reasonable expectation of privacy;

---

[6] Intrusion upon seclusion or invasion of privacy can be brought against "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (1977)

[7] Restatement (Second) of Torts § 652C (1977): "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy."

[8] Restatement (Second) of Torts § 652D (1977): "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."

[9] Restatement (Second) of Torts § 652E (1977): "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

> 3. The intrusion would be highly offensive to a reasonable person; and
> 4. That the defendant's conduct was a proximate cause of damage to plaintiff.

*Doe v. Gonzaga Univ.*, 24 P.3d 390, 399 (Wash. 2001), *rev'd on other grounds*, 536 U.S. 273 (2002); *see also Mark v. Seattle Times,* 635 P.2d 1081, 1094 (Wash. 1981). Whether or not the plaintiffs in the Underlying Action could assert a common law intrusion upon seclusion claim against Swapp Law absent the DPPA depends on whether or not the accident reports obtained by Swapp Law are a "matter or affair" in which "plaintiff had a legitimate and reasonable expectation of privacy." *Id.*

Under Washington law, "[t]he assessment of whether a cognizable privacy interest exists" requires "an inquiry into a person's subjective expectation of privacy" and an objective "examination of whether the expectation is one which a citizen of [Washington] should be entitled to hold." *State v. Martin*, 25 P.3d 488, 492 (Wash. Ct. App. 2001), *aff'd sub nom. State v. McKinney*, 60 P.3d 46 (Wash. 2002) (citing *City of Seattle v. McCready,* 868 P.2d 134 (Wash. 1994)). Relying on *State v. McKinney*, 60 P.3d 46 (Wash. 2002), Hartford argues that Washington residents do not have a constitutionally "protected privacy interest in the information contained in a [Department of Licensing] driver's record." *State v. McKinney*, 60 P.3d 46, 52 (Wash. 2002). But *State v. McKinney* was a criminal case, the holding of which is limited to the unremarkable proposition that driving records are not protected from warrantless searches by law enforcement. "[C]itizens of this state are not entitled to expect that their information is private and protected from disclosure for *law enforcement purposes*." *Id.* (emphasis added). And holding that driver's information is not protected from law enforcement officials is not tantamount to holding that there is no privacy interest in the information at all. The court must therefore more fully examine

Washington law to determine whether it would support a claim for damages in the Underlying Action absent the DPPA or a Washington state statute.

Current Washington state law does recognize a privacy interest in driving records. However, it does so pursuant to statute. Washington's disclosure statute, Revised Washington Code 46.12.635, provides that, except under certain circumstances, "the name or address of an individual vehicle or vessel owner shall not be released by the department, county auditor, or agency or firm authorized by the department." RCW 46.12.635 (2016). The subsequent section, RCW 46.12.640, establishes penalties for "unauthorized disclosure of information" and other violations of RCW 46.12.635. Importantly, however, there is no private cause of action for damages under the statute. And even if a claim for damages had been brought pursuant to RCW 46.12.640, those damages would still be excluded from coverage under the Policy because they arise out of a state statute and the Statutory Exclusion applies to claims for damages arising under both federal and *state* statutes.

The court has been unable to locate any authority suggesting that Washington recognized a "constitutionally protected privacy interest in . . . drivers' records" in Washington prior to the passage of RCW 46.12.635 (formerly codified at 46.12.380) in 1990.[10] In fact, the Washington legislature "recognized an important privacy interest in driver's license records" *only* when it passed RCW 46.12.635.[11] And there is absolutely nothing to suggest that Washington recognized

---

[10] In fact, "[u]ntil 1990 there were no restrictions on who could obtain vehicle registration information." *State v. McKinney*, 60 P.3d 46, 49 (Wash. 2002) (citing *Final Legislative Report,* 51st *28 Leg., Reg. Sess. at 55 (Wash.1990) and Substitute H.B. 2463; Laws of 1990, ch. 232).

[11] "In 1990, the legislature clearly articulated its concern that 'indiscriminate release of the vehicle owner information [is] an infringement upon the rights of the owner and can subject owners to intrusions on their privacy.'" *State v. McKinney*, 60 P.3d at 52 (J. Chambers, concurring) (quoting Laws of 1990, ch. 232, § 1). To address this concern, it "enacted severe restrictions on the terms of disclosure and mandated notification to the driver." *Id.* (quoting Laws of 1990, ch. 232, § 2).

a common law claim for damages arising from a recognized privacy interest in driver's license or motor vehicle information prior to the passage of the statute. In short, any right of action that may currently exist under Washington law *was created by statute*. *See Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 957 F. Supp. 2d 1135, 1150–51 (C.D. Cal. 2013), *aff'd*, 635 F. App'x 351 (9th Cir. 2015) (holding that a Statutory Exclusion applied because "[t]he legislative history of the Song–Beverly Act illustrates that the Act created a new statutory right of privacy in 1991 that *previously did not exist at common law*." (emphasis added)).

### 3. No Duty to Defend

Because the only privacy right that an individual may have in his or her driving record in the state of Washington was created by statute, the exception to the Statutory Exclusion does not apply. The damages claimed in the Underlying Action are subject to the Statutory Exclusion and thus are excluded from coverage. As a result, Hartford has no duty to defend Swapp Law in the Underlying Action. Having so concluded, the court need not and does not reach whether the Distribution Exclusion applies.

### C. DUTY TO INDEMNIFY

Because coverage for claims asserted in the Underlying Action are excluded, Hartford has no duty to indemnify Swapp Law. *Basic Research, LLC v. Admiral Ins. Co.*, 297 P.3d 578, 580 (Utah 2013).

### ORDER

Hartford's Motion for Judgment on the Pleadings (ECF No. 30) is **GRANTED**. Because the damages asserted in the Underlying Action, *Wilcox, et al. v. Swapp Law PLLC, et al.,* Case No. 2:17-cv-275, are excluded from coverage under the Policy, Hartford has neither a duty to defend nor a duty to indemnify Swapp Law in the Underlying Action.

Signed December 17, 2018

                                BY THE COURT

                                _____

                                Jill N. Parrish
                                United States District Court Judge