IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE,<br><br>*Plaintiff*,<br><br>v.<br><br>SWAPP LAW, PLLC and JAMES CRAIG SWAPP,<br><br>*Defendants*. | **MEMORANDUM DECISION AND ORDER DENYING COUNTERCLAIM-PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:17-cv-01130<br><br>District Judge Jill N. Parrish |

This matter comes before the court on a Motion for Summary Judgment filed on November 6, 2018 by Counterclaim Plaintiffs Swapp Law, PLLC and James Craig Swapp (collectively, "Swapp Law"). Counterclaim Defendant Hartford Casualty Insurance ("Hartford") filed an opposition to the motion on January 3, 2019, to which Swapp Law replied on February 1, 2019. Having reviewed the parties' memoranda and associated exhibits as well as the relevant law, the court now DENIES Swapp Law's Motion for Summary Judgment.

## I.  STATEMENT OF FACTS

Hartford is an insurance company organized under the laws of Indiana with its principal place of business in Connecticut. Since 2013, Hartford has provided business liability insurance to Swapp Law, a Utah limited liability company, under a policy that was renewed annually (the "Policy").[1] The Policy covers claims brought against Swapp Law arising from bodily injury, property damage, or personal and advertising injury, provided that such claims do not fall under one of the specified exclusions.

---

[1] Although there are actually five separate policies, each covering a different year, the court refers to them collectively as "the Policy." The parties have stipulated that the policies are identical for the purposes of this case. All citations will refer to the policy running from February 2016 to February 2017. *See* Hartford Spectrum Business Insurance Policy (February 15, 2016 – February 15, 2017), Mot. J. Pleadings, Exhibit 4.

On August 9, 2017, Swapp Law was named as defendant in the civil action *Wilcox, et. al. v. Swapp Law PLLC, et al.*, Case No. 2:17-cv-275 (E.D. Wash. 2017) (the "Underlying Action"). The Underlying Action alleges that Swapp Law violated the federal Driver's Privacy Protection Act (18 U.S.C. § 2721 *et seq.*) by purchasing accident reports from the Washington State Patrol and using the personal information gleaned from the reports to mail motorists unsolicited Swapp Law advertisements.

Swapp Law notified Hartford of the Underlying Action and Hartford acknowledged receipt of the complaint in a letter dated August 15, 2017. This letter stated, in part:

> At this time . . . Hartford has not yet made a determination as to whether [Swapp Law] is entitled to coverage in connection with the [Underlying Action]. In the interim, we suggest that you retain your own attorney to protect your interests in this matter. In the event we determine that coverage may exist and we agree to defend this suit, we will reimburse you only for those reasonable legal costs and fees incurred by you for the defense of this action . . . While the issue of what constitutes "reasonable legal costs and fees" may not be apparent to you, the legal community doing defense work in this area is well aware of the acceptable scale. You may wish to contact the undersigned prior to hiring an attorney since charges considered to be above the acceptable scale could result in our not covering your legal costs and fees in their entirety.

Two days after receiving this letter, Swapp Law signed an engagement letter with the Lane Powell law firm to defend against the Underlying Action. The engagement agreement included the hourly rate of the lead attorney, Barbara Duffy ("Duffy"), as well as the hourly rates of other attorneys and paralegals within the firm.

On October 5, 2017, Hartford agreed to defend Swapp Law under a reservation of rights, which stated that should it be determined that Hartford has no duty to provide a defense, Hartford would "withdraw from the defense of the [Underlying Action]" and possibly "seek reimbursement of all costs [Hartford] . . . expended in the defense."

On February 2, 2018, Rich Humpherys ("Humpherys"), an attorney representing Swapp Law with respect to insurance coverage matters, provided Hartford with the rates charged by the attorneys from Lane Powell doing most of the work on the Underlying Action: Duffy, Ryan McBride ("McBride"), and Aaron Schaer, whose hourly rates were respectively $645, $540, and $310. Humpherys wrote: "I understand from the insured's defense counsel . . . that Hartford's rates for this kind of work is $250/hr., which is only a fraction of [Duffy's] rate."

On February 19, 2018, Melissa Siggia ("Siggia"), responding on behalf of Hartford, made "an accommodation on this one case only to accept" the rates charged by Duffy and McBride. Duffy then emailed Siggia to identify additional attorneys and a paralegal who would also be working on the case. "We need to address the rates for these other timekeepers," Duffy wrote.

A week later, Duffy wrote Siggia again: "What is our next step on addressing the other timekeeper rates?" Duffy sent a follow-up on March 13, 2018, stating that "[w]e also need our rates approved and you have only approved two timekeepers."

On March 14, 2018, Siggia wrote to Duffy, explaining that Hartford had approved rates for Duffy and McBride, but that all other timekeepers would be billed "at [Hartford's] previously identified rates of $195 per hour for associates and $100 for paralegals." Following this email, Hartford proceeded to pay the Lane Powell associates and paralegals who worked on the Underlying Action $195 per hour and $100 per hour, respectively.

On October 12, 2017, one week after agreeing to defend under a reservation of rights, Hartford brought a declaratory judgment action against Swapp Law in this court, seeking a declaration that it had no duty to defend or indemnify Swapp Law in the Underlying Action. On March 22, 2018, Swapp Law answered and filed a counterclaim against Hartford, arguing that Hartford breached its duty to defend by refusing to pay in full the rates charged by Lane Powell.

In its counterclaim, Swapp Law seeks judgment against Hartford for the amount Swapp Law incurred in defending the Underlying Action.

On June 4, 2018, Hartford moved for judgment on the pleadings on its declaratory action. On December 17, 2018, this court granted Hartford's motion, finding that the claims alleged in the Underlying Action were excluded from coverage and therefore, Hartford had no duty to defend. By this motion, Swapp Law moves the court for summary judgment on its counterclaim seeking payment for the full amounts billed by Lane Powell.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "In applying this standard, we view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011).

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

## III. DISCUSSION

Under Utah law,[2] an insurance company presented with an insured's tender of defense that believes it is not liable for coverage has two options: "[t]he insurer may either 'protect its interests through a declaratory judgment proceeding' asking the court to determine coverage under an insurance policy, or it may 'defend the suit under a reservation of its right to seek repayment later.'" *Summerhaze Co., L.C. v. Fed. Deposit Ins. Corp.*, 332 P.3d 908, 921 (Utah 2014) (quoting *Hartford Accident & Indem. Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1382 (7th Cir. 1985)). Hartford, when presented with Swapp Law's tender of defense, agreed to provide a defense under a reservation of rights. One week later, Hartford sought a declaratory judgment that it had no duty to defend or indemnify Swapp Law in the Underlying Action.

As stated in the court's December 17, 2018 Memorandum Decision and Order Granting Plaintiff's Motion for Judgment on the Pleadings (the "Declaratory Order"), the duty to defend and the duty to indemnify are contractual and "hinge[] on the particular contractual terms of the insurance policy defining the scope of the duty to defend and the duty to indemnify." *Fire Ins. Exch. v. Estate of Therkelsen*, 27 P.3d 555, 560 (Utah 2001). Although "the duty to defend is measured by the nature and kinds of risks covered by the policy," *Deseret Fed. Sav. & Loan Ass'n v. United States Fid. & Guar. Co.*, 714 P.2d 1143, 1146 (Utah 1986), it is also dependent on whether the allegations in the underlying complaint give rise to potential liability. *See Basic Research, LLC v. Admiral Ins. Co.*, 297 P.3d 578, 580 (Utah 2013). Thus, "[t]he question of whether there is potential liability under the policy 'is determined by comparing the language of

---

[2] The parties stipulate that Utah law governs the interpretation of the Policy.

the insurance policy with the allegations of the complaint.'" *Id.* (quoting *Benjamin v. Amica Mut. Ins. Co.*, 140 P.3d 1210, 1214 (Utah 2006)). "This so-called 'eight corners' rule allows [the court] to determine whether the allegations alone trigger the terms that provide the duty to defend in the insurance policy." *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 266 P.3d 733, 737 (Utah 2011). "If the language found within the collective 'eight corners' of these documents clearly and unambiguously indicates that a duty to defend does or does not exist, the analysis is complete." *Id.*

In this case, the terms of the Policy state that "[Hartford] will have the right and duty to defend [Swapp Law] against any 'suit' [to which this insurance applies]. However, [Hartford] will have no duty to defend [Swapp Law] against any 'suit' seeking damages for . . . 'personal and advertising injury' *to which this insurance does not apply*." *See* Policy, Business Liability Form § A (1)(a) (emphasis added). Thus, Hartford's duty to defend Swapp Law, and thus its duty to compensate Swapp Law for any legal costs and fees incurred by Swapp Law, hinged exclusively on whether the claims asserted in the Underlying Action fell under the plain language of the Policy.[3]

Because the court ruled in its Declaratory Order that the claims asserted in the Underlying Action did not fall under the plain language of the Policy, Hartford cannot be held responsible for legal costs and fees it had no duty to provide in the first instance. *See Basic Research*, 297 P.3d at 580 ("Where the allegations, if proved, show that there is no potential

---

[3] Under the Policy and Utah law, it is possible that Hartford could have a duty to defend, but ultimately no duty to indemnify, its insured. This situation arises where the underlying complaint alleges conduct that would be covered under the policy at issue, but later factual development renders the suit outside of coverage. Utah law requires that, "[w]here factual questions render coverage uncertain . . ., the liability insurer must defend until those uncertainties can be resolved against coverage." *Benjamin v. Amica Mut. Ins. Co.*, 140 P.3d 1210, 1215 (Utah 2006). Here, by contrast, the allegations in the Underlying Action, even if proved, would not give rise to coverage under the Policy, and no factual development could alter the legal conclusion that the Policy does not cover liability flowing from violations of the Driver's Privacy Protection Act.

liability [under the policy], there is no duty to defend." (alteration in original) (quoting *Deseret Fed. Sav. & Loan Ass'n*, 714 P.2d at 1147).

Swapp Law argues that Hartford's August 15, 2017 letter and subsequent reservation of rights created an obligation for Hartford to pay defense costs until a judicial determination on coverage was made. But Swapp Law provides no authority for the proposition that an insurer's duty to defend can be enlarged beyond the terms of the contract to include additional costs incurred by the insured. In fact, Utah law provides to the contrary. *Equine Assisted Growth & Learning*, 266 P.3d at 735 ("An insurer's 'duty to defend arises solely under [the terms of the] contract.'") (alteration in original) (quoting *Fire Ins. Exch.*, 27 P.3d at 560). Under Utah law, Hartford's duty to defend, and thus its duty to compensate Swapp Law for the legal costs and fees incurred prior to the court's issuance of the Declaratory Order, is solely governed by the allegations of the Underlying Action and the terms of the Policy. Therefore, Hartford cannot be liable to fulfill a duty to defend that never existed in the first place.

Alternatively, even if Hartford did, in fact, have a duty to defend Swapp Law prior to this court's determination that the claims asserted in the Underlying Action were excluded from coverage, Swapp Law acted unreasonably by hiring Lane Powell and failing to confirm with Hartford that Lane Powell's rates would be reimbursed.

A determination of a duty to defend, even under a reservation of rights letter, does not necessarily require Hartford to reimburse Swapp Law for all of the legal costs and fees incurred prior to this court's decision that Hartford has no duty to defend. In Hartford's August 15, 2017 letter to Swapp Law acknowledging Hartford's notice of the Underlying Action, Hartford stated that Swapp Law would be reimbursed only for "reasonable" legal costs and fees. That letter further stated that "the legal community doing defense work in this area is well aware of the

7

acceptable scale" of legal costs and fees. Finally, the letter warned Swapp Law that, in order to ensure reimbursement, Swapp Law may wish to confirm before hiring an attorney what rates Hartford will consider to be reasonable. And, as evidenced by attorney Humphery's February 2, 2018 email, Swapp Law was clearly aware of the precise rates Hartford considered to be reasonable.

On the basis of Hartford's August 15, 2017 letter, and Swapp Law's knowledge of Hartford-approved rates, Swapp Law knew, or should have known, it would not be reimbursed for any and all attorneys' fees it incurred. In its August 15, 2017 letter, Hartford indicated that it considered a particular spectrum of legal fees and costs to be reasonable and therefore, eligible for reimbursement. Thus, Swapp Law was on notice that, to ensure it would not be saddled with unreimbursable attorneys' fees, it had an obligation to determine that range, whether by contacting Hartford directly or seeking the opinion of lawyers who perform this kind of defense work in the relevant area. Even without Hartford's warning about reimbursable attorneys' fees, Swapp Law—no stranger to the mechanics of insurance defense—would have been well aware that insurance companies don't merely write blank checks to fund the defense of potentially covered claims.

Only two days after receiving Hartford's letter, Swapp Law hired Lane Powell, under an engagement letter agreeing to pay multiple lawyers more than $500 per hour. Swapp Law may well have concluded that its potential liability flowing from the Underlying Action was so great that it needed lawyers who charged nearly three times what Hartford deemed reasonable, and further that it was willing to assume the difference between Lane Powell's rates and Hartford's reimbursement. Or Swapp Law may have merely overlooked Hartford's clear warnings about the rates it would reimburse. In any event, in light of these facts, Swapp Law incurred these

attorneys' fees at its own risk, knowing that Hartford would not merely rubber stamp any attorneys' invoice it received.

In sum, Hartford had no duty under the Policy to defend against the Underlying Action and Swapp Law incurred exorbitant attorneys' fees at its own risk. Thus, Hartford has no obligation to reimburse Swapp Law for the difference between the rates charged by Lane Powell and those approved by Hartford.[4]

## IV. ORDER

For the reasons articulated, Swapp Law's Motion for Partial Summary Judgment (ECF No. 42) is **DENIED.**

Dated _____8/1/2019_____

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

[4] Because Hartford has not yet requested reimbursement of the legal costs and fees paid to date, Hartford's right to reimbursement is not currently before the court. However, the Utah Supreme Court addressed the right to reimbursement under a reservation of rights in the context of a claim brought by an insurer to recover restitution against its insured for amounts paid in excess of the policy limits. *U.S. Fidelity v. U.S. Sports Specialty*, 270 P.3d 464 (Utah 2012). The court stated that "an insurer's claim to an unbargained-for right to reimbursement from its insured presents a perverse manipulation of risk that has no place in our law. As a result, the right to reimbursement must be specifically bargained for and set forth in writing under [Utah Code] before it may be enforced." *Id.* at 470. The court concluded that "there can be no extracontractual right to restitution between the insurer and its insured, and only the express terms of a policy create an enforceable right to reimbursement." *Id.* at 471. Thus, while *U.S. Fidelity* supports Hartford's argument that, under Utah law, its duty to defend cannot be enlarged beyond that explicitly provided under the Policy, it also casts serious doubt on the validity of Hartford's extracontractual, unilateral reservation of rights to seek reimbursement of attorneys' fees it has already paid.